# 24-10814

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**RACHEL LYNN WADDELL,**
Defendant-Appellant

---

On Appeal from the United States District Court
For the Northern District of Texas
Amarillo Division
District Court No. 2:23-CR-069-Z

---

**APPELLEE'S BRIEF**

---

Chad E. Meacham
Acting United States Attorney

Lauren C. Murphree
Assistant United States Attorney
Texas State Bar No. 24085059
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401-4002
Telephone: (806) 472-7322
lauren.murphree@usdoj.gov

Attorneys for Appellee

## **STATEMENT REGARDING ORAL ARGUMENT**

Although this case involved a jury trial, the trial was short and straightforward, and the evidentiary issue Waddell raises on appeal is easily resolved under the deferential standard of review and this Court's established precedent. The government agrees the judgment contains a clerical error, and this court has the authority to correct it. Accordingly, the government does not believe that oral argument would significantly aid the Court in its decisional process.

# **TABLE OF CONTENTS**

**Page**

STATEMENT REGARDING ORAL ARGUMENT......................................i

TABLE OF AUTHORITIES .........................................................iii

STATEMENT OF JURISDICTION...............................................1

STATEMENT OF THE ISSUES ...................................................1

STATEMENT OF THE CASE.......................................................1

    1.    After the Amarillo Police Department receives information about a fentanyl distribution ring in Amarillo, agents uncover a conspiracy and identify Waddell as a distributor ........................1

    2.    A grand jury charges Waddell with conspiracy to distribute fentanyl, and a jury finds her guilty..............................................5

SUMMARY OF THE ARGUMENT.............................................7

ARGUMENT AND AUTHORITIES............................................8

    1.    The district court did not abuse its wide discretion in admitting photos of the PillEye application ...............................................8

        A.    The government properly authenticated the PillEye photos.................................................................................9

        B.    The probative value of the PillEye photos outweighs any danger of unfair prejudice .............................................15

        C.    Any error in admitting the photos was harmless...............16

    2.    The clerical error Waddell identifies is immaterial, but this Court can simply correct it .......................................................18

CONCLUSION...........................................................................20

CERTIFICATE OF COMPLIANCE ............................................20

**TABLE OF AUTHORITIES**

**Federal Cases**                                                                                    **Page(s)**

*United States v. Alaniz*, 726 F.3d 586 (5th Cir. 2013)........................................ 8

*United States v. Alejandro*, 354 F. App'x 124 (5th Cir. 2009) ........................... 14

*United States v. Barnes*, 803 F.3d 209 (5th Cir. 2015)....................................... 18

*United States v. Bernal*, 814 F.2d 175 (5th Cir. 1987).........................................8

*United States v. Cabrera-Lopez*, 298 F. App'x 299 (5th Cir. 2008)..................... 17

*United States v. Ceballos*, 789 F.3d 607 (5th Cir. 2015)...........................9, 12, 13

*United States v. Fields*, 483 F.3d 313 (5th Cir. 2007)........................................ 15

*United States v. Jackson*, 636 F.3d 687 (5th Cir. 2011) .......................................9

*United States v. Jasso*, 2023 WL 1879405 (5th Cir. Feb. 10, 2023)................... 17

*United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988) ...................................... 13

*United States v. Liu*, 960 F.2d 449 (5th Cir. 1992) ...............................................8

*United States v. Maldonado*, 2024 WL 3540462 (5th Cir. July 25, 2024)........... 19

*United States v. Martin*, 651 F. App'x 265 (5th Cir. 2016)................................ 19

*United States v. Nagin*, 810 F.3d 348 (5th Cir. 2016) ........................................ 19

*United States v. Okulaja*, 21 F.4th 338 (5th Cir. 2021).....................11, 12, 13, 16

*United States v. Ragsdale*, 426 F.3d 765 (5th Cir. 2005).....................................8

*United States v. Seale*, 600 F.3d 473 (5th Cir. 2010)...........................................8

*United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991) ..................................12, 13

**Federal Cases, continued**                                    **Page(s)**

*United States v. Williams*, 957 F.2d 1238 (5th Cir. 1992).................................8

*United States v. Wilson*, 720 F. App'x 209 (5th Cir. 2018)............................. 13

*United States v. Winters*, 530 F. App'x 390 (5th Cir. 2013)..............14, 15, 16, 17

**Federal Statutes and Rules**

18 U.S.C. § 3231 ..................................................................................... 1

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 2106 ................................................................................... 18

Fed. R. App. P. 4(b) ................................................................................ 1

Fed. R. Crim. P. 36 ............................................................................... 19

Fed. R. Evid. 403 ................................................................................. 15

## STATEMENT OF JURISDICTION

This is a direct appeal from a conviction in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291. The district court entered judgment on August 30, 2024, (ROA.286), and Waddell timely filed a notice of appeal on September 5, 2024, (ROA.291). Fed. R. App. P. 4(b).

## STATEMENT OF THE ISSUES

1.      Did the district court abuse its discretion in admitting photos of pills from an application on Waddell's phone, when she admitted to taking the photographs and using the application?

2.      While the judgment contains a clerical error, it is immaterial, but if this Court chooses to remedy the error it can modify the judgment and affirm as modified.

## STATEMENT OF THE CASE

**1.   After the Amarillo Police Department receives information about a fentanyl distribution ring in Amarillo, agents uncover a conspiracy and identify Waddell as a distributor.**

In July 2023, Amarillo Police Department (APD) officers received information that two individuals in Amarillo, Texas, were distributing fentanyl from their apartment. (ROA.661-62.) Officers conducted surveillance, observed behavior consistent with narcotics trafficking, and secured a search

1

warrant for the apartment. (ROA.662.) Once inside, the officers seized fentanyl pills, firearms, cash, and cell phones. (ROA.663.)

Forensic analysis of the cell phones revealed a distribution ring that included Waddell, her boyfriend T. Blue Bloomer, and a suspected supplier named Gary Carlisle, Sr., among others. (ROA.663-64.) In August 2023, Carlisle—who resided in Albuquerque, New Mexico—traveled to Amarillo where officers executed a search warrant on his motel room. (ROA.663-66.) Inside, law enforcement seized approximately 30 grams of suspected powder cocaine, 20 grams of suspected fentanyl pills, 6 grams of suspected fentanyl powder, just under $8,000 cash, firearms, and more cell phones. (ROA.666.) Officers located evidence on Carlisle's phones that Carlisle was distributing fentanyl directly to Waddell. (ROA.667.) Specifically, there were numerous coded text messages between the two that were consistent with narcotics trafficking, along with multiple Cash App[1] transactions that corresponded with Waddell's purchases from Carlisle. (ROA.671-82.)

Based on the additional evidence implicating Waddell on Carlisle's phone, APD Officer Mincher continued to investigate Waddell and Bloomer's roles in the conspiracy. (ROA.683.) Officer Mincher determined that Waddell

---

[1] Cash App is a phone or computer-based application that can be used "to transfer money back and forth between individuals." (ROA.669.)

had traveled to Albuquerque, New Mexico, and Oklahoma City, Oklahoma—both known fentanyl hubs for Amarillo residents.  (ROA.684.)  Officers formulated a plan to conduct a traffic stop of Waddell's vehicle and arrest her on an outstanding warrant.  (ROA.685.)  Waddell—who did not immediately yield to the lights and sirens directing her to stop—eventually pulled over and was compliant with the officers.  (ROA.687.)

Officer Mincher noticed loose pieces of tinfoil, commonly used by fentanyl users, inside of the vehicle, and Waddell admitted on scene that the tinfoil was used for fentanyl consumption.  (ROA.689-90.)  A probable cause search of her vehicle followed, and in the driver's seat Officer Mincher observed a piece of wadded up tinfoil that contained suspected fentanyl in the form of compressed white powder.  (ROA.691.)  Officers also located multiple small blue pills they suspected to be fentanyl, as well as digital scales containing residue, and a glass pipe.  (ROA.691-92.)

Officers arrested Waddell on her outstanding warrant, and she agreed to give a statement.  (ROA.696.)  Waddell admitted to purchasing fentanyl powder and pills from Carlisle and paying him via Cash App.  (ROA.712-13.)  She explained that Michael Winbigler (Waddell's original supply source and another indicted member of the conspiracy) introduced her to Carlisle, who she began to purchase from directly.  (ROA.707-10.)  Waddell also admitted to

further distributing the pills she purchased, (ROA.714, 717), and she consented to a search of her phone.[2] (ROA.736.)

On Waddell's phone, Officer Mincher located an app called "PillEye" that contained photographs of pills and an apparent pill-count. (ROA.730-32; GX 14.) Waddell admitted to using the PillEye app, and when opened, the app displayed a greeting that said "Welcome, Rachel." (ROA.732.) Waddell explained that she would photograph pills upon purchase "as [she] broke them down," as she sold them, and then when she got where she was going to make sure the pill count was correct. (ROA.732, 751.) The app showed how many photographs had been taken, and a total count of the pills depicted in the photographs. (ROA.749; GX 34-A.) In addition to the PillEye photos, Waddell's text messages and Cash App transactions further corroborated her role in the fentanyl distribution conspiracy with Carlisle and Bloomer. Waddell referred to her fentanyl distribution as a "business" and said she had several repeat and "big[]" customers. (ROA.715; GX 75.)

---

[2] In addition to admitting that she was selling pills, Waddell also admitted to daily use, at times upwards of 20 pills a day, and occasional use of fentanyl powder. (ROA.733-34.)

**2.    A grand jury charges Waddell with conspiracy to distribute fentanyl, and a jury finds her guilty.**

A grand jury charged Waddell and ten others in a Superseding Indictment with conspiracy to distribute and possess with intent to distribute fentanyl in violation of 21 U.S.C. § 846.  (ROA.17.)  Waddell pled not guilty and proceeded to trial.

During the three-day trial, the government presented substantial evidence that Waddell was heavily involved in the conspiracy to distribute fentanyl in Amarillo, Texas.  Much of the government's proof was derived from Waddell's own admissions, evidence on Waddell's and others' cell phones, and actual fentanyl seized during the August traffic stop.  (*See, e.g.*, ROA.790, 833, 838; GXs 66, 77, and 78.)

At trial, Officer Mincher testified about the PillEye app and the photographs he took of Waddell's phone.  Specifically, Officer Mincher observed that in many of the photos, the pictured pills are laying on a distinct countertop that Officer Mincher knew to be a countertop in Waddell's house.  (ROA.750, 772; GXs 34-A, 41-A, and 60.)  Additionally, the dates of several of the photographs corresponded with significant investigate dates.  For example, the app contained a photograph of pills taken on August 7, 2023— the same day text messages revealed Carlisle was in Amarillo and met with Waddell and Bloomer to exchange pills.  (ROA.750-51.)  Officer Mincher also

5

photographed the PillEye app on Bloomer's phone, as it appeared he shared an account with Waddell. (ROA.847-48; GX 41-A.) The photos from Bloomer's phone also showed photographs of pills taken on Waddell's countertop. (ROA.849.)

The government presented further evidence of Waddell's involvement in the conspiracy through numerous Cash App transactions and text messages with involved players. (*See* ROA.679-80; GX 35 and 66.) As Officer Mincher testified, Waddell initially denied having a Cash App account, but eventually admitted to having an account and sending Carlisle money through the app. (ROA.712-13.)

The jury found Waddell guilty. (ROA.286.) The presentence report (PSR) assigned Waddell a base offense level of 30 and added two levels for possession of a dangerous weapon in relation to the offense, two levels for maintaining a premise for the purpose of manufacturing or distributing a controlled substance, and an additional two levels for being an organizer, leader, manager, or supervisor in the criminal offense. (ROA.1406.) With a total offense level of 36 and a criminal history category of V, the guideline range was 292 months to 365 months, lowered to the statutory maximum of 240 months. (ROA.1424.) The district court sentenced Waddell to 240 months. (ROA.286.) This appeal follows.

## SUMMARY OF THE ARGUMENT

1.      Waddell argues that the photos taken of the PillEye application on her cell phone—which contained photos she admitted to taking and uploading to the application—were not properly authenticated.  But the government admitted the photos through the officer who took them, along with Waddell's admissions to using the application to upload the pictures she took of fentanyl pills.  The testimony more than surpassed the low bar for authentication, and the district court did not abuse its wide discretion in admitting the photographs.

2.      Waddell correctly identifies a clerical error in the judgment, which this Court can easily correct.  The judgment states that Waddell plead guilty, but a jury convicted her.  Though the error is immaterial, this Court can modify the judgment and affirm as modified, affirm with a limited remand to the district court to correct the error, or affirm and allow the district court to exercise its discretion to correct the error.

## ARGUMENT AND AUTHORITIES

1.   **The district court did not abuse its wide discretion in admitting photos of the PillEye application.**

**Standard of Review**

Evidentiary rulings are reviewed for abuse of discretion. *United States v. Liu*, 960 F.2d 449, 452 (5th Cir. 1992). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Alaniz*, 726 F.3d 586, 606 (5th Cir. 2013) (quoting *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005)). A "trial court is afforded wide discretion in assessing the relevance and prejudicial effect of evidence." *United States v. Seale*, 600 F.3d 473, 494 (5th Cir. 2010).

Even if evidence is improperly admitted, the harmless-error doctrine applies. *Id.* The "primary question" with respect to harmless error is what effect the error had, or reasonably may have had, upon the jury's decision, when viewed "in relation to the entire proceedings." *United States v. Bernal*, 814 F.2d 175, 184 (5th Cir. 1987). An evidentiary error is harmless if it would not have a substantial impact on the jury's verdict, like when the evidence of the defendant's guilt is overwhelming. *United States v. Williams*, 957 F.2d 1238, 1244 (5th Cir. 1992) (citing *Bernal*, 814 F.2d at 184).

## Discussion

"The standard for authentication is not a burdensome one." *United States v. Jackson*, 636 F.3d 687, 693 (5th Cir. 2011).  Federal Rule of Evidence 901(a) "merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *United States v. Ceballos*, 789 F.3d 607, 617 (5th Cir. 2015) (internal quotation marks and citation omitted).  "Testimony by a witness with knowledge of the item, the item's own distinctive characteristics, and the circumstances of the item's recovery may each suffice to authenticate the evidence." *Id.* at 617-18.  This Court "does not require conclusive proof of authenticity," and "once the proponent has made the requisite preliminary showing of authenticity, . . . the ultimate responsibility for determining whether evidence is what the proponent says it is rests with the jury." *Id.* (internal quotation marks and brackets omitted).  The proponent's burden is a low one. *Id.*

### A.    The government properly authenticated the PillEye photos.

The government introduced the photos of the PillEye application on Waddell's phone through Officer Mincher, whose testimony more than cleared the low bar for authentication.  (ROA.736-37; GXs 34-A and 41-A.)  Officer Mincher—who took the photos, searched Waddell's house where the photos were taken, and questioned Waddell about the application—testified about

9

several distinctive characteristics in the photographs that connected the pills to Waddell.

Specifically, Officer Mincher testified the application's home page contains a greeting that says "Welcome, Rachel." (ROA.749; GX 34-A.) Officer Mincher also testified that the photographs of "the small, round, blue pills normally stamped with M and 30" depicted suspected fentanyl. (ROA.750.) The pills are shown "laying on a countertop, a distinct countertop that was identified during the investigation as being a countertop at [] Waddell's house." (ROA.750.) Additionally, the dates on the photographs corresponded with dates important to the investigation, such as a photograph of pills taken on August 7, the same day Carlisle was in Amarillo and that Waddell met with Carlisle at his motel to obtain fentanyl. (ROA.750-51); (*see also* ROA.753 (discussing a photo taken on May 18, 2023, the same day Bloomer was in possession of a substantial amount of suspected fentanyl pills).) Officer Mincher also testified that he spoke with Waddell, who admitted to using the app and explained "that she would take photographs when she first got the pills when she got home," then again "when she would repackage them for sale" and then "even after she got back after meeting with people just to make sure that the count was right and that she hadn't been ripped off." (ROA.751); (*see also* ROA.843 (admitting to using the PillEye

10

app).)  Thus, there was more than "some evidence" that the photos were what the government claimed them to be.

In overruling Waddell's authentication objection at trial, the district court likened the photographs and pill counts on the app to a drug ledger. (ROA.369.)  As such, it found the photos were relevant in that they made it "more likely that defendant was communicating with conspiracy members for the purposes of distributing narcotics."  (ROA.369.)  The district court thus found the government met its burden of authentication, specifically noting that "the testimony of Officer Mincher properly authenticated these redacted exhibits using circumstantial evidence, testimony and the distinctive characteristics and circumstances surrounding the discovery of the items depicted in those photographs."  (ROA.743.)  On this record and consistent with this Court's precedent, the trial court did not abuse its discretion when it admitted the PillEye photos into evidence.

Indeed, this Court has routinely found photographic and ledger-type evidence properly authenticated with similar testimony.  In *United States v. Okulaja*, for example, this Court held that the district court did not abuse its discretion in admitting two webcam photos over a Rule 901 objection where the sponsoring witness "testified clearly that each picture 'is what it is claimed to be" regardless of conclusive proof of who was identified in the photos.  21

F.4th 338, 345 (5th Cir. 2021).  Any further dispute goes "to the weight of the evidence instead of its admissibility," and "[t]he ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury."  *Id.*  Here, the PillEye photos were not entered to show that Waddell was necessarily in possession of a specific number of pills on a specific day, but to show that she was routinely involved in the trafficking of a substantial amount of fentanyl pills as part of a larger conspiracy.  (*See* ROA.369.)  Any additional questions regarding the reliability of the app or whether the pills were actually fentanyl were issues of weight for the jury to decide, not issues of admissibility for the court.

And, Officer Mincher's testimony supports the district court's assessment that the photos were similar to drug ledgers, which this Court has also routinely found to be admissible.  In *Ceballos*, for example, this Court held that the district court did not abuse its discretion in admitting the defendant's notebook—presented to the jury as a smuggling ledger—through the agent who handled the defendant's possessions after her arrest.  789 F.3d at 617-20.  In its analysis, this Court relied on its earlier decision in *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991), where the defendant challenged the authentication of certain items seized from his wallet and car.  *Id.*  The Court noted that, in *Wake*, the government properly authenticated the items "through

12

the testimony of a DEA agent who participated in the criminal investigation," and who "testified as to the circumstances under which [the items were] seized." *Id.* at 618 (quoting *Wake*, 948 F.3d at 1434); *see also United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988); *United States v. Wilson*, 720 F. App'x 209, 210 (5th Cir. 2018) (finding that the government met the low evidentiary threshold for authentication in admitting defendant's clothes from the time of his offense, where officer testified that she observed the defendant wearing the clothes at the time and established the chain of custody). So, too, did Officer Mincher participate in the investigation and seizing of Waddell's phone after her arrest. Officer Mincher testified as to the circumstances under which the phone was seized and searched, including Waddell's admissions to taking photos of pills and using the app.

Waddell argues that because Officer Mincher had insufficient direct knowledge of the app and its reliability, the photographs were not properly authenticated. (Brief at 16.) In support, she urges that that the government could not authenticate the photographs unless it showed that Waddell was present when the photographs were taken, or that she took the photographs, and that the pills were actually fentanyl. (Brief at 16.) Yet, Rule 901 and this Court's precedent do not require any of the conditions of admission that Waddell advocates for. *See Okulaja*, 21 F.4th at 345 (explaining that a

13

sponsoring witness need not be the photographer or see the picture taken so long as he can recognize and identify the object depicted and testify that the photograph fairly and correctly represents it); *United States v. Alejandro*, 354 F. App'x 124, 128 (5th Cir. 2009) (finding the "detective did not have to actually create the map, so long as he could testify as to its accurate depiction [of the area at issue]"); *cf. United States v. Winters*, 530 F. App'x 390, 395 (5th Cir. 2013) (finding that photos were improperly authenticated where the witness "was not able to recognize and identify the objects in the photos").

But even under Waddell's artificially heightened standard for authentication, the government surpassed the bar for proving reliability. Officer Mincher, an 18-year veteran of APD who worked for five years as a Drug Enforcement Administration task force officer and is specially trained in the detection and interdiction of narcotics, testified that the photos from the PillEye app appeared to be fentanyl pills.  (ROA.660-61.)  He also testified that he seized Waddell's phone upon her arrest and took photos of the application as Waddell explained how she used it.  (ROA.749-52.)  Waddell admitted to both consuming and dealing fentanyl and using the app to do so.  (ROA.1130 ("And 'cause you count 'em when you break 'em down" and "[w]hen you sell 'em, you count 'em.").)  Thus, there was ample testimony to support that the pills depicted in the PillEye photos were fentanyl, and that Waddell was not

14

only present when the photographs were taken but that she took them herself. The government properly authenticated the photographs, so the trial court did not abuse its discretion.

### B. The probative value of the PillEye photos outweighs any danger of unfair prejudice.

Waddell next argues that the trial court should have excluded the PillEye photos under Federal Rule of Evidence 403. Rule 403 affords courts discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury[.]" Fed. R. Evid. 403. District courts are afforded "an especially high level of deference" in conducting Rule 403 analyses. *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

In support of her Rule 403 argument, Waddell relies on *United States v. Winters*, where this Court held the district court erred in admitting photographs taken from social networking sites because the photographs were highly prejudicial and had little probative value. *Winters*, 530 F. App'x at 395. In *Winters*, the photographs at issue were posted on Winter's Facebook and MySpace profiles, which Winters admitted to using. *Id.* But there was no evidence that Winters or any member of the conspiracy had possession or control of the pictured items. *Id.* As a result, the photos had "little probative value as to Winters's involvement in the conspiracy." And, "more

15

significantly, the pictures, depicting overwhelming amounts of cash, several weapons with silencers, and substantial amounts of cocaine packaged for distribution, [were] highly prejudicial." *Id.*

*Winters* is distinguishable. As the district court noted, "the probative value of the pictures is higher because the government has now connected distinctive characteristics between the pills appearing in those exhibits and those possessed by . . . Waddell." (ROA.743) (distinguishing *Winters*). Unlike photos taken from a website, the photographs at issue here were taken from Waddell's phone, which she admitted to using. (ROA.843.) And unlike in *Winters*, here Waddell admitted to taking pictures of pills and uploading them to the app. (ROA.843.) In this case, the government tied Waddell to the incriminating photographs in a way that it did not do in *Winters*.

### C.    Any error in admitting the photos was harmless.

Even if Waddell could show that the district court erred in admitting either Exhibit 34-A and/or 41-A, any error was harmless. "Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *See Okulaja*, 21 F.4th at 344 (internal quotation marks omitted). Here, the government's other substantial evidence—including witness testimony, text messages, Cash App transactions,

actual fentanyl that was in Waddell's possession, and Waddell's own admissions—overwhelmed any claim of innocence.

In similar situations, including in *Winters*, this Court has not hesitated to affirm convictions despite alleged authentication errors. In *Winters*, this Court held the authentication errors were harmless in light of the "overwhelming" independent evidence of Winters' involvement in the conspiracy. *Winters*, 530 F. App'x at 396 (highlighting Winters' admitted purchases and sales of cocaine, and a drug ledger, phone records, digital scales, a home-surveillance system and razor blades that all corroborated Winters' involvement in the conspiracy); *see also United States v. Cabrera-Lopez*, 298 F. App'x 299, 301 (5th Cir. 2008) (any error in admitting agent's testimony concerning authenticity of the defendant's driver's license was harmless in light of other evidence presented at trial); *United States v. Jasso*, No. 21-40790, 2023 WL 1879405, at *4 (5th Cir. Feb. 10, 2023) (unpublished) (finding that even if the defendant's birth certificate had been improperly authenticated, any error was harmless because there was no reasonable possibility that the improperly admitted evidence contributed to the conviction). The evidence here is every bit as strong as the evidence in *Winters*—and more than enough to show that any error in admitting the PillEye photos was harmless.

Indeed, because the jury heard testimony that overlapped significantly with the contents of the challenged photos, any error in admitting them was clearly harmless. "Improperly admitting evidence that is duplicative of testimony at trial does not warrant reversal under harmless error review." *United States v. Barnes*, 803 F.3d 209, 218 (5th Cir. 2015). Here, the content of the photographs—numerous amounts of pills—was largely duplicative of what Officer Mincher and other witnesses testified to directly. Thus, even if improperly admitted, the photographs were largely duplicative of other trial testimony describing Waddell selling and distributing volumes of fentanyl pills, such that any error in their admission was harmless.

In sum, the district court committed no authentication error, but—even if it did—that error was harmless.

2. **The clerical error Waddell identifies is immaterial, but this Court can simply correct it.**

Waddell correctly identifies an error in the district court's judgment: the judgment reflects that she entered a plea of guilty, but Waddell actually was convicted by a jury. (Brief at 19; ROA.286.) This distinction is immaterial to Waddell's conviction and needs no correction.

Even so, should the Court conclude that the error warrants correction, it may act on its own to modify the judgment and affirm as modified. *See* 28 U.S.C. § 2106. Alternatively, this Court can order a limited remand to the

18

district court for the purpose of correcting the judgment pursuant to Rule 36 of the Federal Rules of Criminal Procedure, or it can affirm and allow the district court to exercise its discretion to correct the judgment.  *See* Fed. R. Crim. P. 36; *United States v. Nagin*, 810 F.3d 348, 354 (5th Cir. 2016) (affirming judgment "without affecting the district court's authority to correct any clerical errors"); *United States v. Martin*, 651 F. App'x 265, 267-68 (5th Cir. 2016) (remanding for the limited purpose of correcting a clerical error in the judgement, and affirming in all other regards); *United States v. Maldonado*, No. 23-50859, 2024 WL 3540462, at *1 (5th Cir. July 25, 2024) (affirming and allowing the district court to exercise its discretion to clarify the judgment or the defendant to move the court to do so after appellate proceedings are complete).  Whether as modified or with a limited remand, this Court should affirm notwithstanding the clerical error in the judgment.

19

## CONCLUSION

This Court should affirm the judgment or, where appropriate, modify the

judgment to correct the clerical error and affirm the judgment as modified.

Respectfully submitted,

Chad E. Meacham
Acting United States Attorney

*s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney
Texas State Bar No. 24085059
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401-4002
Telephone: (806) 472-7322
lauren.murphree@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,032 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*s/ Lauren C. Murphree*
Lauren C. Murphree

20